Filed 6/30/26  Mendoza v. LeBaron CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JENNIFER LYNN MENDOZA, | D086814 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2023-00006784-CU-HR-EC) |
| LIANA NOREEN LEBARON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Tim Nader, Judge.  Affirmed as modified and remanded with instructions.

Briggs Law Corporation and Cory J. Briggs for Defendant and Appellant.

Jennifer Lynn Mendoza, in pro per., for Plaintiff and Respondent.

Liana Noreen LeBaron appeals a postjudgment order awarding her a portion of her requested additional attorney fees and costs.  The order came after LeBaron conducted a judgment debtor exam of Jennifer Lynn Mendoza to collect attorney fees after LeBaron's partially successful anti-SLAPP

motion.[1]  LeBaron challenges the portion of the order setting postjudgment interest over both judgments at 5 percent rather than at 10 percent.  She argues the postjudgment debt is not a "personal debt" that would qualify for the lower interest rate and contends she is therefore entitled to the statutory 10 percent interest rate under Code of Civil Procedure,[2] section 685.010, subdivision (a)(1).  Based on the statute's plain language, we agree.  We will therefore direct the trial court to modify the postjudgment order to award interest at the statutory rate of 10 percent.  As modified, we will affirm the order.

**FACTUAL AND PROCEDURAL HISTORY**

In 2023, Mendoza filed a civil harassment restraining order petition against LeBaron describing LeBaron's egregious and harassing conduct toward Mendoza and her husband.  In response, LeBaron filed an anti-SLAPP motion under section 425.16 to strike portions of Mendoza's request for a restraining order.[3]  The trial court partially granted LeBaron's anti-SLAPP motion and Judge Lynch ordered Mendoza to pay LeBaron statutory attorney fees and costs in the amount of $32,683.  Mendoza never appealed the anti-SLAPP ruling or the extremely high attorney fee and costs award.

---

[1]  "Anti-SLAPP" refers to the procedural vehicle to strike legal actions intended as a "strategic lawsuit against public participation."  (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 57.)

[2]  All further statutory references are to the Code of Civil Procedure.

[3]  The temporary order was later dismissed after LeBaron showed she stopped her harassing behavior.  Judge Lynch ruled on the anti-SLAPP motion notwithstanding.

LeBaron later filed a second memorandum of costs claiming she incurred additional postjudgment attorney fees and costs in the amount of $33,067.[4]  Mendoza then filed a motion to strike/tax those costs.

After considering the parties' argument, "[t]he court found that many of the fees and costs claimed on the Memorandum of Costs After Judgment filed by Respondent on December 18, 2024 were not necessary or reasonable pursuant to [section] 685.040.".[5]  Consequently, the trial court awarded LeBaron an additional $7,735 in attorney fees and costs.  In its order, the trial court concluded that section 685.010 defined Mendoza's money judgment as a "personal debt" which accrues annual interest at a rate of 5 percent, rather than the default 10 percent.  LeBaron appealed.

## DISCUSSION

### A.  Statutory Language

Section 685.010, subdivision (a)(1), establishes that "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied."  Effective January 1, 2023, the Legislature amended the statutory interest rate under section 685.010 to include a rate of 5 percent per annum for certain exceptions to the general rule.

---

[4]  We call this the second postjudgment attorney fees and costs memorandum, though there is another intervening postjudgment attorney fees and costs memorandum in the appellate record which neither party addresses.  This intervening memorandum was signed by Mr. Briggs, but it does not bear a trial court file stamp.

[5]  A different trial judge heard this second attorney fee motion.

(Stats. 2022, ch. 883, § 6.)  Section 685.010, subdivision (a), as amended, provides, in relevant part:

> "(1) Except as provided in paragraph (2), interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied.
>
> "(2)(A) For judgments entered on or after January 1, 2023, or where an application for renewal of judgment is filed on or after January 1, 2023, interest accrues at the rate of 5 percent per annum on the principal amount of a money judgment remaining unsatisfied in the following cases:
>
> "(i) The principal amount of a money judgment of under two hundred thousand dollars ($200,000) remaining unsatisfied against a debtor for a claim related to medical expenses.
>
> "(ii) The principal amount of a money judgment of under fifty thousand dollars ($50,000) remaining unsatisfied against a debtor for a claim related to personal debt."

The statute defines "personal debt" as "money due or owing or alleged to be due or owing from a natural person arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for the debtor's personal, family, or household purposes."  (§ 685.010, subd. (a)(2)(C)(iii).)

## B.  The plain meaning of "personal debt" under section 685.010, subdivision (a)(2)(C)(iii)

LeBaron argues that the interest rate on the unpaid portion of the judgment is the statutory 10 percent rate—not 5 percent—because the judgment against Mendoza is not "personal debt" as described under section 685.010, subdivision (a)(2)(C)(iii).  Neither party disputes the money judgment award amount.

4

As this appeal depends on the meaning of the words used in section 685.010, it presents "a question of law that we review de novo." (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.) When interpreting a statute, we must "determine the Legislature's intent so as to effectuate the law's purpose." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 (*Coalition*).) We first give the language "a plain and commonsense meaning . . . in the context of the statutory framework as a whole[,] in order to determine its scope and purpose and to harmonize the various parts of the enactment." (*Ibid*.) We "must generally follow [the] plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Ibid*.) If the "language permits more than one reasonable interpretation," however, we "may consider other aids, such as the statute's purpose, legislative history, and public policy," to assess its meaning. (*Ibid*.)

As noted, section 685.010, subdivision (a)(2)(C)(iii) defines "personal debt" as "money due . . . arising out of a transaction in which the money, property, insurance, or services[,] which are the subject of the transaction are primarily for the debtor's personal, family, or household purposes." The statute does not define "transaction." "When a statute does not define its operative words, 'courts should give to the words . . . their ordinary, everyday meaning. . . . ' [Citation.]" (*County of Orange v. Santa Margarita Water Dist*. (1996) 44 Cal.App.4th 189, 192.) We turn, then, to Black's Law Dictionary for assistance. Black's Law Dictionary defines "transaction" as: "1. The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract. 2. Something performed or carried out; a business agreement or exchange. 3. Any activity involving two or more persons. 4. *Civil law*. An agreement that is intended by the parties to

5

prevent or end a dispute and in which they make reciprocal concessions." (Black's Law Dict. (12th ed. 2024) p. 1808, col. 2.) Here, Mendoza's petition for a civil restraining order and LeBaron's anti-SLAPP motion is a transaction because, at minimum, it concerned "activity involving two or more persons."

Next, the statute narrows the relevant subject matter of the transaction by defining a covered financial obligation as one "*arising out of a transaction in which the money, property, insurance, or services* which are the subject of the transaction . . . ." (§ 685.010, subd. (a)(2)(C)(iii), italics added.) The statute uses restrictive, not open-ended, language. It does not say "including" money, property, insurance, or services. Instead, it limits covered transactions to those "in which" one of those four categories is the subject of the transaction.

The relative clause "*which are the subject of the transaction*" further operates to limit the listed categories rather than provide nonexclusive examples. (§ 685.010, subd. (a)(2)(C)(iii), italics added.) This means the statute does not define every financial obligation owed as a "personal debt." Rather, the plain language of the definition limits the subject matter of the transactions to those involving money, property, insurance, or services. A transaction that does not involve any of those subjects necessarily falls outside a plain reading of the statute.

Here, the money judgment arose out of a transaction in which the subject matter was a civil restraining order and anti-SLAPP motion—not a transaction involving money, property, insurance, or services. Thus, the financial obligation arising from this litigation is not within the ambit of "personal debt" as defined in section 685.010, subdivision (a)(2)(C)(iii). Because the plain language of the statute is clear and unambiguous,

6

" 'we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.]" (*California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 266.)  Thus, we need not consider other aids such as the Legislative history to inform our analysis. (See *Coalition*, *supra*, 34 Cal.4th at 737.)

## DISPOSITION

The trial court shall modify the order to reflect a 10 percent annual rate of interest on any unsatisfied portion of the money judgment.  As modified, we affirm.  The parties shall bear their own costs on appeal.


RUBIN, J.

WE CONCUR:


DO, Acting P. J.


KELETY, J.

7